## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HOLLEY MERRICK | CIVIL ACTION |
| VERSUS | NUMBER: 11-3129 |
| GAUBERT'S FOOD MART, INC, ET AL | SECTION: "C" (4) |

### ORDER & REASONS

On December 12, 2010, Holley Merrick made a night deposit bag delivery from her employer, Gaubert's Food Mart, to the Whitney Bank branch in Galliano, Louisiana.  The next business day, December 13, 2010, a Whitney employee, Tiffany Savoie Rainwater, counted the money in the deposit bag and believed that there was a $1,000 discrepancy between the amount deposited and the amount listed on the deposit slip.  The branch manager, Wanda Theriot, re-counted the deposit with Ms. Rainwater and agreed.  Ms. Theriot then called the manager of Gaubert's, Cindy Orgeron, to notify her of the discrepancy and to ask her to come to the bank to verify the contents of the deposit bag.

Ms. Orgeron traveled to the bank branch on December 14, 2010, where she verified the contents of the deposit bag and it was determined that no money was in fact missing—Ms. Rainwater and Ms. Theriot had made a mistake.  Before that happened, however, someone at Gaubert's called the Lafourche Parish Sheriff's Department and reported that Ms. Merrick had stolen the money.  She was then arrested.  Ms. Merrick was also fired, but there is a dispute of fact as to whether this occurred on the day she was arrested, December 13, 2010, or December 22, 2010.

1

Ms. Merrick then filed suit against Whitney, Gaubert's, the Lafourche Parish Sheriff's Office, its sheriff, Craig Webre, and the investigating deputy, Phillip Guidry, asserting various constitutional claims, a state-law claim for wrongful termination, and a claim under Louisiana Civil Code 2315.  All parties other than Whitney were dismissed for failure to prosecute, and Whitney moved for summary judgment.  The Court GRANTS Whitney's motion. Rec. Doc. 40.  The plaintiff's claim against Whitney for her wrongful arrest has prescribed, and in any event, she has failed to overcome Whitney's qualified privilege to communicate about a suspected theft, which applies to both her claim relating to her arrest and the loss of her job.

## Standard of Review

Rule 56 of the Federal Rules of Civil Procedure states: "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. When considering whether any genuine issues of material fact exists, courts view the evidence and inferences drawn from that evidence in the light most favorable to the non-moving party. *United States ex rel. Reagan v. East Texas Medical Center Regional Healthcare System*, 384 F.3d 168, 173 (5th Cir. 2004) (citing *Daniels v. City of Arlington, Texas*, 246 F.3d 500, 502 (5th Cir. 2001)).

An issue is material if its resolution could affect the outcome of the action. *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute precludes summary judgment if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Hunt v. Rapides Healthcare Sys*. LLC, 277 F.3d 757, 762 (5th Cir. 2001).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322–24).  In order to satisfy its burden, the nonmoving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See e.g.*, *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 871–73 (1990). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See* Anderson, 477 at 247–48 (1996). "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249–50.

## ANALYSIS

**Prescription**

Whitney asserts that the claims against it have prescribed because claims under Louisiana Civil Code 2315 must be brought within one year, Ms. Merrick filed suit on December 21, 2011, and Whitney's involvement ended on December 14, 2010.  The one-year prescriptive period begins "to run from the day injury or damage is sustained," so Ms. Merrick's claim relating to her wrongful arrest prescribed one year from the day she sustained that injury—the arrest—or December 13, 2011.  La. Civ. Code art. 3492.  But if the factual dispute as to when Ms. Merrick was terminated—December 13 or December 22, 2010—is resolved in her favor, then the claim relating to her wrongful termination did not prescribe before she filed suit.  Accordingly, summary judgment in favor of Whitney is proper on Ms. Merrick's claim relating to her arrest, but not proper on her claim relating to her wrongful termination.

3

**Qualified Privilege**

Whitney, relying on *Kennedy v. Sheriff of East Baton Rouge Parish*, 935 So. 2d 669 (La. 2006), asserts that Louisiana law provides it with a qualified privilege to report suspected thefts, and it therefore may not be held liable for the adverse consequences that flowed from its allegedly negligent tabulation of the money in the night deposit bag.  In *Kennedy*, a patron of Jack in the Box paid with a $100 bill that the employees thought was counterfeit because it looked "unusual."  935 So. 2d at 673–74.  They alerted deputies from the local sheriff's office, who arrested the plaintiff while determining whether the bill was counterfeit.  *Id.*  A simple test using the widely available anti-counterfeiting pen revealed that the bill was genuine, and the plaintiff was released.  *Id.*  He then sued, among others, Jack in the Box because its employees incorrectly accused him of trying to pass a counterfeit bill.

The Louisiana Supreme Court held that Jack in the Box was entitled to a qualified privilege to report its suspicion of criminal behavior and dismissed the suit.  Noting that "[i]t would be self-defeating for society to impose civil liability on a citizen for inaccurately reporting criminal conduct with no intent to mislead," the Court adopted the Second Restatement's public interest privilege, which protects statements that "affect[] a sufficiently important public interest" where "the public interest requires the communication of the defamatory matter to a public officer or a private citizen who is authorized or privileged to take action if the defamatory matter is true." *Kennedy*, 935 So. 2d at 682 (quoting Restatement (Second) of Torts § 598).  It had no trouble concluding that the privilege "clearly applie[d]" on the facts before it, because the Jack in the Box employees "reported circumstances involving a matter affecting the public interest—the possible commission of a crime" to "the police, who had a duty to take action should the allegations prove to be true."  *Id.* at 683.

Although earlier cases suggested that the privilege, once established, could be defeated by a showing "that the defamatory statements were not made in good faith, or more precisely, with reasonable grounds for believing the statements to be true," the Court ultimately concluded that "mere negligence as to falsity (or lack of reasonable grounds for believing the statement to be true) is no longer sufficient to prove abuse of the conditional privilege." *Id.* at 684. "Instead, knowledge or reckless disregard as to falsity is necessary," *id.* at 684, and it is the plaintiff's burden to make this showing of "abuse of the privilege." *Id.* at 687. The Court reasoned that "[u]nless such protection is extended, fear of being exposed to civil liability could discourage individuals from alerting police to suspicious activity, thereby enabling criminals to escape detection and endangering other potential victims." *Id.* at 685.

On the facts of this case, Whitney is entitled to the qualified public interest privilege under Louisiana law. The branch manager communicated something that clearly relates to a public interest (suspicion of criminal wrongdoing) to a "private citizen who is authorized or privileged to take action if the defamatory matter is true," namely, the manager at Gaubert's. Indeed, the case for application of the privilege here is even stronger than in *Kennedy*, because Whitney's manager held off on calling the police (and ultimately never did) until the manager from Gaubert's could travel to the bank and verify the discrepancy.[1]

As *Kennedy* noted, this privilege may be overcome by a showing of abuse. But it is the plaintiff's burden to make this showing, and Ms. Merrick has not even made an effort to do so. Her response to Whitney's motion for summary judgment does not even state in a conclusory

---

[1] Indeed, the fault, if any exists here at all, is more fairly attributable to Gaubert's for calling the police before sending a manager to verify the discrepancy and then allegedly firing Ms. Merrick despite the fact she never should have been arrested. But Gaubert's is no longer a defendant.

manner that Whitney acted with knowledge or reckless disregard and instead speaks of

"incompetence,""negligence," and "errors."  Under *Kennedy*, negligence is not enough.

The application of the qualified public interest privilege works no injustice here.  Even if it

did not apply, it is very doubtful that Ms. Merrick could make the required showing of fault or

causation on her only remaining claim, that against Whitney for its role (if any) in her allegedly

wrongful termination.  Whitney did not fire Ms. Merrick, and Whitney corrected the error before

(viewing the facts in the light most favorable to Ms. Merrick to save her claim from prescription)

she was fired.

## CONCLUSION

For the foregoing reasons, Whitney's motion for summary judgment is GRANTED.  Rec.

Doc. 40.

New Orleans, Louisiana, this 7th day of May 2013.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE